# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LAURA WIENS,

    *Plaintiff*,

vs.

MICHAEL ASTRUE, Commissioner of
Social Security,

    *Defendant.*

Case No. 09-1355-EFM

## MEMORANDUM AND ORDER

Plaintiff Laura Wiens seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits. Having reviewed the record, and as described below, the Court orders that the decision of the Commissioner is affirmed.

## I. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the administrative law judge ("ALJ") applied the correct legal standard.[1]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires

---

[1] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

more than a scintilla, but less than a preponderance."[2] The court is not to reweigh the evidence or substitute its opinion for the ALJ.[3] The Court must, however, examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[4] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[5]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[6]

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.[7] The claimant bears the burden during the first four steps.[8] In steps one and two, the claimant must demonstrate that she is not presently engaged in substantial gainful activity and she has a medically severe impairment or combination of impairments.[9] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits."[10] If, however, a claimant does not establish an impairment at step three,

---

[2] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[3] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

[4] *Wall,* 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[5] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citation omitted).

[6] 42 U.S.C. § 416(I); *see also* 42 U.S.C. § 423(d)(1)(A)-2(A).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 404.1520(a);.

[8] *Lax*, 489 F.3d at 1084.

[9] *Id.* (citations omitted).

[10] *Id.*

the process continues. The Commissioner assesses a claimant's residual functioning capacity (RFC), and at step four, the claimant must demonstrate that her impairment prevents her from performing her past work.[11] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's RFC.[12] The RFC assessment is used to evaluate the claim at both step four and step five.[13]

## II. Factual and Procedural Background

Plaintiff Laura Sue Wiens applied for a Title II period of disability and disability insurance benefits and a Title XVI application for supplemental security income (SSI) on March 18, 2005. Her claims were denied on June 15, 2005, and upon reconsideration on May 31, 2006. Plaintiff then requested a hearing, which occurred on February 12, 2008. The administrative law judge (ALJ) issued an unfavorable opinion on May 1, 2008, finding that Plaintiff was not under a disability as defined in the Social Security Act at any time from September 17, 2004, Plaintiff's alleged onset date of disability, through the date of the decision. On October 8, 2009, after reviewing additional evidence, the Appeals Council denied Plaintiff's request for review.

The relevant facts leading up to Plaintiff's claims are summarized as follows. Plaintiff alleges that her disability began on September 17, 2004, when she was 52 years old. Plaintiff worked as a clerical assistant and food service worker prior to her alleged onset date of disability, and as a cashier after her alleged onset date of disability. In her disability report, Plaintiff claimed

---

[11] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[12] *Lax*, 489 F.3d at 1084; 20 C.F.R. § 416.920(a)(4)(v).

[13] *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

disability due to mitral valve prolapse, lower back pain, and a tumor in her right wrist.[14]

In August 2004, about a month before the alleged onset date of disability, Plaintiff complained of right wrist pain, and underwent an operation to correct it on September 21, 2004. The surgery went well, and Plaintiff was bowling again by November 2004. A few weeks later, an x-ray of Plaintiff's spine revealed mild to moderate degenerative disc disease. In March 2005, a cardiologist diagnosed Plaintiff with dyspnea on exertion, mitral valve prolapse, moderate mitral regurgitation, hypertension, fatigue, weight gain, and atypical chest pain.

A few weeks later, Plaintiff's former chiropractor and employer wrote a lettering questioning the basis for Plaintiff's claim of disability and noting that Plaintiff could "still be seen several times weekly at the bowling alley doing what she loves best, bowling."[15]

Plaintiff continued to have various health issues over the next several months, including, but not limited to, left knee pain as a result of stepping in a hole. In November 2005, Plaintiff requested surgery for her back and denied any back pain at the time of her discharge from the operation. Several months later, Plaintiff reported that her lower back pain was gone. Dr. Chan examined Plaintiff informed her that she did not have a disability, despite the fact that she asked for "some sort of disability rating."

Almost a year later in March 2007, Plaintiff underwent a functional capacity evaluation in which the examiner noted that Plaintiff could function at a sedentary level with some restrictions. Several months later, Plaintiff complained of left knee pain, and began receiving steroid injections

---

[14] In Plaintiff's brief, she also claims to suffer from the additional physical impairments: a disabling impairment to her left hand, diabetes, mellitus type II, neuropathy associated with diabetes, a significant impairment to her left knee and fibromyalgia. To support these claims, Plaintiff cites not to the listed impairments in the disability report, but instead to her testimony at the hearing. As discussed, below, the ALJ did not find Plaintiff credible.

[15] Tr. 239.

to help relieve the pain. Plaintiff told her doctor that she got immediate pain relief and further reported that her knee felt great.

In November 2007, Plaintiff was diagnosed with fibromyalgia, bursitis, degenerative joint disease of the carpometacarpal joints, and trigger points. The diagnosing doctor treated Plaintiff for several months and wrote that her pain was rarely "severe enough to interfere with attention and concentration needed to perform even simple work tasks," and further noted that Plaintiff was capable of low stress jobs with unscheduled breaks.

At the administrative hearing on February 12, 2008, Plaintiff testified regarding her limitations. A vocational expert also testified at the hearing, and noted that hypothetical claimant with the same restrictions as Plaintiff could return to Plaintiff's past relevant work as a receptionist and return check processor.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 17, 2004, the alleged onset date. At step two, the ALJ determined the Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine, and the non-severe impairments of history of mitral valve prolapse, and history of excision of upper extremity lipoma. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment.

After establishing Plaintiff's residual functional capacity (RFC), the ALJ found that Plaintiff had the capacity to perform the full range of light work listed in the CFR. At step five, the ALJ determined that Plaintiff could perform work as a receptionist and a returned check processor. As such, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

Plaintiff requested review of the ALJ's decision by the Appeals Council which denied her

request. The decision of the ALJ, therefore, stands as the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff seeks relief from this Court.

### III. Analysis

Plaintiff claims the ALJ erred because (1) he did not properly evaluate the severity of Plaintiff's impairments; (2) he did not properly evaluate the credibility of Plaintiff's subjective allegations; (3) he did not properly consider the medical opinions of record; (4) he did not properly derive Plaintiff's RFC; and (5) he improperly found that Plaintiff could return to her past relevant work.

### 1. The ALJ's Evaluation of the Severity of Plaintiff's Impairments

The ALJ found that "claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . ."[16] Plaintiff argues that the ALJ erred by not finding her degenerative disc disease, mitral valve prolapse, coronary artery disease, diabetes, neuropathy, knee injury, fibromyalgia, depression, and carpal tunnel syndrome severe impairments. Specifically, Plaintiff claims that the ALJ did not give sufficient weight to the treating physician's opinion.

The Commissioner counters that the ALJ did correctly find that Plaintiff had severe degenerative disc disease of the lumbar spine, and properly refused to find any other impairments severe because the medical evidence failed to show that any other impairment significantly limited Plaintiff's basic work activities for 12 months or longer.

For an impairment to be severe, it must "significantly limit a claimant's physical or mental

---

[16] TR p. 22.

ability to do basic work activities."[17] There is significant evidence in the record to support the ALJ's finding that the impairments listed above were not severe. The medical evidence of record failed to show that any of these impairments significantly limited Plaintiff's basic work activities for 12 months or longer. Many of these conditions significantly improved with surgery or treatment. Plaintiff's argument that the ALJ failed to consider the combination of all Plaintiff's impairments is without merit. Indeed, the ALJ specifically noted that Plaintiff did not have "an impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments."[18]

## 2. Plaintiff's Subjective Allegations

Plaintiff argues that the ALJ ignored her testimony. The Commissioner counters that the ALJ extensively discussed Plaintiff's testimony and reports of her activities.

In evaluating a claimant's credibility regarding her subjective complaints of pain, the ALJ must consider "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."[19] In considering whether the pain is disabling, an ALJ can consider several factors, such as Plaintiff's daily activities, the dosage of her medications, and the frequency and extent of her contact with health care professionals.[20] "Credibility determinations are peculiarly the province of the finder of fact, and a court will not

---

[17] 20 C.F.R. § 404.1521(a).

[18] TR p. 22. *See Brown v. Callahan*, 120 F.3d 1133, 1136 (10th Cir. 1997) (finding that an ALJ considered a claimant's impairments in combination when, as in this case, the ALJ found that the claimant "did not have an impairment, or combination of impairments, listed in or equivalent to those contained" in the CFR).

[19]*Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (citations omitted).

[20] *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).

upset such determination when supported by substantial evidence."[21]

The ALJ discussed and analyzed the medical evidence in evaluating the credibility of Plaintiff's subjective allegations. The ALJ's determination is supported by the record. For example, Plaintiff's daily activities detracted from the credibility of her subjective allegations.[22] Plaintiff reported numerous activities, including bowling, which are inconsistent with her allegations of disability. Plaintiff argues that she reported more extensive activities in her function report than in her testimony because her condition worsened over time. The evidence, however, does not show a worsening of Plaintiff's condition; rather, it shows significant improvement. Other factors detracting from Plaintiff's credibility were her failure to seek consistent treatment, and the inconsistency with the RFC assessment.[23] A review of the record establishes that the ALJ outlined good reasons for discounting Plaintiff's credibility and relied on substantial evidence in the record. As such, this court is compelled to accept the ALJ's findings.

### 3. The ALJ's Consideration of the Medical Opinions

Plaintiff argues that the ALJ failed to give sufficient weight to her treating physician's opinion regarding the mitral valve prolapse. Although Plaintiff fails to identify a specific physician, the court will assume that she is referring to her cardiologist, Dr. Boxberger. Plaintiff further fails to identify an opinion by Dr. Boxberger assigning her restrictions. Indeed, Dr. Boxberger never gave Plaintiff restrictions, and the medical evidence fails to reveal any hospitalizations or surgeries related to Plaintiff's cardiac condition.

---

[21] *Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1303 (D. Kan. 2007).

[22] *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002).

[23] *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (discussing frequency and extent of a claimant's contact with health care professionals as factors the ALJ can consider in the credibility analysis).

Further, a review of the record shows that the ALJ properly gave Dr. Malik's opinion little weight because he examined Plaintiff only once time and gave his opinion through checking of boxes.[24] Further, the record supports the ALJ's substantial weight analysis of the State agency medical consultant because it was consistent with the record as a whole.[25] Accordingly, substantial evidence supports the ALJ's analysis of the medical opinions of record.

**4. RFC**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and non-medical evidence."[26] In addition, SSR 96-8p provides that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." The RFC assessment "must always consider and address medical source opinions" and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[27] The ALJ's decision must be sufficiently articulated for the court to engage in a meaningful review.[28]

In this case, the ALJ considered the evidence and made findings of fact and conclusions of law. Plaintiff claims that the ALJ erred in its finding, and points to her own testimony to support her claim that she can perform only sedentary work. As explained above, however, the ALJ found

---

[24] *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d) (frequency of contact with a source and the nature of the source's relationship to claimant are factors the ALJ can consider); *Homstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (use of checklist format may limit an assessment's evidentiary value).

[25] *See* 20 C.F.R. §§ 404.1527(d), 404.1527(f)(2)(I), and 416.927(f)(2)(I).

[26] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *see also Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005).

[27] SSR 96-8p, 1996 WL 374184, at *7.

[28] *Id.* (citing *Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003)).

that the Plaintiff's testimony was inconsistent with the medical evidence and her daily activities, and thus found it not credible. Accordingly, substantial evidence supports the ALJ's RFC determination.

**5. Plaintiff's Past Relevant Work**

Plaintiff argues that the ALJ never asked the vocational expert whether someone with her age, education, work experience, and RFC could perform pat relevant work or other work existing in the national economy. An ALJ need not obtain testimony from a vocational expert, however, when the ALJ finds that a claimant can perform past relevant work.[29]

Although the ALJ was not required to obtain testimony from a vocational expert in this case, the ALJ nevertheless properly relied on vocational expert testimony to determine that Plaintiff could return to her past relevant work as a receptionist and a returned check processor.[30] Indeed, the ALJ questioned the vocational expert about the limitations of a hypothetical claimant with greater restrictions that those found in Plaintiff's RFC, and the vocational expert responded that the hypothetical claimant could still perform past relevant work as a receptionist and return check processor. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff regarding Plaintiff's past relevant work.

In sum, substantial evidence on the record as a whole supports the Commissioner's decision.

**IT IS ACCORDINGLY ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

---

[29] 20 C.F.R. § 404.1560(b) and 416.960(b).

[30] *See Hargis v. Sullivan*, 945 F.2d at 1492 ( explaining that an ALJ may use a vocational expert's testimony regarding the classification of a claimant's past work as evidence that a claimant can perform his past relevant work.)

**IT IS SO ORDERED**.

Dated this 23rd day of May, 2011.

                                                   s/ Eric F. Melgren
                                           HONORABLE ERIC F. MELGREN
                                           UNITED STATES DISTRICT COURT JUDGE